# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**KRISTOPHER S. OBERG**,

               Plaintiff,

     v.

**CAROLYN W. COLVIN**,
Commissioner of Social Security,

               Defendant.

Case No. 6:14-cv-01839-SI

**OPINION AND ORDER**

Max Rae, Post Office Box 7790, Salem, OR 97303. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Herbert, Assistant United States Attorney, U.S. Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Gerald J. Hill, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 Mailstop 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Mr. Kristopher S. Oberg ("Claimant") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his application

for disability insurance benefits ("DIB") under Title II of the Social Security Act and

supplemental security income ("SSI") under Title XVI of the Social Security Act. For the

following reasons, the Court reverses the Commissioner's decision and remands this case for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Claimant protectively filed applications for DIB and SSI on May 25, 2011, alleging disability beginning January 1, 2003. AR 11, 81. Claimant was born on November 15, 1966 and was 49 years old at the time he submitted the applications. AR 246, 249. Claimant alleges disability based on depression, left knee problems, neck problems, anxiety, low back problems, attention deficit disorder, obsessive compulsive disorder, and pain in his left arm. AR 80-81.

The Commissioner denied Claimant's applications initially and upon reconsideration. AR 11. Thereafter, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). Claimant appeared for a hearing on December 19, 2013. *Id.* The proceedings were continued in order to secure the presence of a vocational expert ("VE"). *Id.* A subsequent hearing was held on April 22, 2014, with a VE present. *Id.* Claimant was represented by counsel at the hearings. *Id.* On June 27, 2014, the ALJ issued a decision finding that Claimant was not disabled within the meaning of the Social Security Act. AR 21. Claimant petitioned the Appeals Council for review of the ALJ's decision. AR 6. On September 19, 2014, the Appeals Council denied the request for review, rendering the ALJ's decision the final decision of the Commissioner. AR 1. Claimant now seeks review of the ALJ's decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

The ALJ began her opinion by noting that Claimant met the insured status requirements of the Social Security Act through June 30, 2010. AR 14. The ALJ then performed the sequential analysis. At step one, the ALJ found that Claimant engaged in substantial gainful activity during the third and fourth quarters of 2012 and 2013. *Id.* The ALJ also found that there has been a continuous 12-month period during which Claimant did not engage in substantial gainful activity. *Id.* The remainder of the ALJ's findings addressed the period during which Claimant did not engage in substantial gainful activity. *Id.*

At step two, the ALJ found that Claimant has the following severe impairments: "mood disorder NOS; degenerative disc disease of the cervical spine with intermittent C6-7 radiculopathy; mechanical low back pain; chronic left hip pain with reduced range of motion, but no objective medical findings." *Id.* At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 15.

The ALJ next assessed Claimant's RFC. The ALJ found that Claimant retained the capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). AR 17. Specifically, the ALJ found that Claimant: (1) could "lift and carry 20 pounds, and 10 pounds frequently"; (2) could "sit, stand, and walk each 6 hours in an 8-hour workday for a combined total of 8 hours of activity"; (3) "should never climb ladders, ropes, or scaffolds"; (4) could "occasionally balance, stoop, crouch, and crawl"; and (5) could "understand, remember, and carry out simple instructions that can be learned through demonstration and that do not require the production of written work product in a setting with no more than occasional contact with co-workers and the public." *Id.*

In formulating the RFC, the ALJ found that although Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR 18. The ALJ considered an August 2012 psychological evaluation by Dr. Scott Alvord. The ALJ gave "significant weight" to that portion of Dr. Alvord's opinion diagnosing Claimant with a mood disorder marked by instances of anxiety and depression. AR 20. The ALJ gave "less weight" to Dr. Alvord's opinion regarding Claimant's alleged "need for a 'very supported and structured' work setting." *Id.*

At step four, the ALJ determined that Claimant has no past relevant work. *Id.* At step

five, based on Claimant's age, education, work experience, RFC, and the testimony of the VE,

the ALJ concluded that Claimant could perform jobs—such as basket filler, small parts

assembler, and assembler of electrical accessories—that exist in significant numbers in the

national economy. AR 21. Thus, the ALJ ruled that Claimant is not disabled. *Id.*

## DISCUSSION

Claimant argues that the ALJ erred by: (1) improperly relying upon a previous

administrative determination that Claimant was not disabled within the meaning of the Social

Security Act; (2) failing to consider whether Claimant's past jobs were trial work periods or

unsuccessful work attempts; (3) failing to consider and credit a determination by the Oregon

Office of Vocational Rehabilitation Services ("VRS") that Claimant was "Most Significantly

Disabled"; and (4) failing to incorporate Claimant's difficulties with concentration, persistence,

and pace into the RFC. The Court addresses each argument in turn.

**A.  The June 25, 2010 Determination**

The ALJ began her decision by noting that the record in Claimant's case included a prior

administrative decision regarding Claimant's previous applications for DIB and SSI, which he

filed on October 30, 2007. AR 11-12. In his previous applications, Claimant alleged disability

beginning January 1, 2003. AR 61. The claims were denied initially and upon reconsideration;

thereafter, Claimant filed a written request for a hearing, which was held on June 22, 2010. *Id.*

On June 25, 2010, an ALJ ruled that Claimant was not disabled. AR 71. The June 25, 2010

decision was upheld by the Appeals Council and was pending appeal in the United States District

Court for the District of Oregon at the time the ALJ issued her June 27, 2014 decision in this case regarding Claimant's 2011 applications.[1] AR 12.

The ALJ in this case considered whether it would be appropriate to apply a presumption of continuing nondisability under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988). In *Chavez*, the Ninth Circuit stated that a claimant, "in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating greater disability." *Id.* at 693 (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)). The ALJ found that Claimant had successfully shown changed circumstances "[f]or the technical reason that the named impairments differ from those in the previous ALJ decision." AR 12. Thus, the ALJ concluded that the *Chavez* presumption could not apply. *Id.*

Claimant argues that the ALJ's opinion impermissibly rests upon the 2010 determination, which this Court later reversed. Claimant appears to be arguing that the ALJ implicitly applied the *Chavez* presumption despite her express assertion otherwise. Claimant points to the ALJ's statement that:

> Based on [Claimant's] report that he regularly lifts up to 50 pounds in his seasonal work, it is reasonable to conclude that he retains at least the capacity for light work assigned in the June 25, 2010 administrative law judge decision—and he is no more disabled now than he was in June 2010.

AR 12. Here, the ALJ does not improperly rely upon the previous decision; rather, the ALJ states that based upon the evidence currently before her, it is reasonable for her to agree with the prior determination that Claimant was not disabled. Claimant also points to the ALJ's statement that

---

[1] On July 24, 2014, this Court reviewed the June 25, 2010 decision, reversed the Commissioner's finding that Claimant was not disabled, and remanded the case to the administrative agency for further proceedings. *Oberg v. Colvin*, 2014 WL 3695609 (D. Or. July 24, 2014).

"[w]hen I inquired as to whether his overall condition has changed since the prior administrative law judge decision, [Claimant] replied that his condition had actually improved and that he was calmer and could think more clearly thanks to prescribed medication." AR 18. Again, the ALJ is not improperly relying upon the previous determination that Claimant was not disabled. It was reasonable for the ALJ to clarify which of Claimant's alleged symptoms remained during the period that was not adjudicated.

Claimant also argues that the Appeals Council erred by not consolidating the 2007 and 2011 applications so that they could be reheard together under the Social Security Administration's Hearings, Appeals and Litigation ("HALLEX") Manual I-1-10-25(B). HALLEX I-1-10-25(b) states as follows:

> If the [Appeals Council] grants review and remands to an ALJ for further proceedings, the remand order will usually address the subsequent application.
>
> The analyst will select the appropriate language from the Document Generation System (DGS), as follows:
>
> - When the subsequent application involves the same title(s) as the request for review, the remand order will state that the [Appeals Council]'s remand action renders the subsequent application duplicate and the claim file(s) must be associated.

Thus, HALLEX I-1-10-25(B) governs remand actions taken by the Appeals Council. It was the District Court, however, that reversed and remanded the previous June 25, 2010 determination that held Claimant to be not disabled. Thus, HALLEX I-1-10-25(B) does not apply to Claimant's 2007 and 2011 applications for DIB and SSI.

## B. Claimant's Past Jobs

At step one, the ALJ considered Claimant's work activity and found that Claimant has engaged in substantial gainful activity during the last two quarters of 2012 and 2013. AR 14. The

ALJ also concluded that "there has been a continuous 12-month period during which Mr. Oberg did not engage in substantial gainful activity," and the ALJ based the remainder of her findings on this period. *Id.* Claimant argues that the ALJ erred by not specifying the particular months in which Claimant engaged in substantial gainful activity. Claimant additionally argues that the ALJ erred by failing to consider whether Claimant's work in 2012 and 2013 constituted "trial work periods" or "unsuccessful work attempts" under the Social Security regulations.

### 1. Periods of Substantial Gainful Activity

The ALJ stated that Claimant's "earnings record indicates that he received a total of $1,431.00 during the last two quarters of 2010, $6,701.00 during the last two quarters of 2012, and $8,556 in 2013." AR 14. The ALJ concluded that Claimant's earnings during the third and fourth quarters of 2012 and 2013 demonstrate that Claimant engaged in substantial gainful activity. *Id.* Claimant argues that the fact that the ALJ did not specify the particular months in which Claimant engaged in substantial gainful activity was error because it makes court review of the trial work period and unsuccessful work attempt exclusions impossible.

The record, however, contains pay records that permit month-by-month findings to be made. Claimant was employed by Hunton's Warehouse as a seasonal worker from July 2012 through December 2012, and again from July 2013 through December 2013. AR 38, 274-77. In the third and fourth quarters of 2012, Hunton's Warehouse paid Claimant $6,701 in wages, an average of $1,340.20 per month. AR 279. In the third and fourth quarters of 2013, Hunton's Warehouse paid Claimant $7,497, an average of $1,499.40 per month. AR 286. These average monthly amounts exceed the average monthly amount that ordinarily shows that an individual is engaged in substantial gainful activity: $1,010 per month in 2012, and $1,040 per month in 2013. 20 C.F.R. §§ 404.1574(b)(2), 404.1574a(a); *Substantial Gainful Activity*, Social Security Administration, https://www.socialsecurity.gov/oact/cola/sga.html (last visited Jan. 21, 2016).

Thus, the ALJ's conclusion that Claimant engaged in substantial gainful activity during the last two quarters of 2012 and 2013 is supported by substantial evidence.

### 2. Trial Work Periods

A claimant is entitled to a trial work period of up to nine months "during which [the claimant] may test [his] ability to work and still be considered disabled." 20 C.F.R. § 404.1592(a). A claimant is entitled to a trial work period if he is determined to be eligible for disability benefits. *Id.* § 404.1592(d)(1). A trial work period begins the month in which a claimant becomes entitled to disability insurance benefits but cannot begin before the month in which a claimant files application for benefits. *Id.* § 404.1592(e). Work attempts made before "any month prior to the month of [the claimant's] application for disability benefits" will not be considered trial work periods. *Id.* § 404.1592(d)(2)(iv). Additionally, a claimant who "perform[s] work demonstrating the ability to engage in substantial gainful activity within 12 months" of their alleged onset date and before notice of any determination or decision regarding their disability is not entitled to a trial work period. *Id.* § 404.1592(d)(2)(iii).

Claimant argues that the ALJ erred by not considering whether Claimant's work in the last two quarters of 2012 and 2013 constituted trial work periods.[2] Claimant relies upon this Court's previous opinion in *Oberg*, where the Court held that the ALJ's failure to analyze whether Claimant's past employment constituted a trial work period was prejudicial error.

---

[2] The Commissioner asserts that Claimant's argument fails at the outset because trial work periods are available only after a claimant has been determined to be eligible for disability benefits and that it is a protection for disability recipients to attempt to reenter the work force without losing their benefits. The Commissioner criticizes this Court's previous conclusion to the contrary for relying on unpublished Ninth Circuit decisions and a dissenting opinion. *See Oberg*, 2014 WL 3695609, at *5. The Commissioner, however, cites no case law in support of her assertion.

2014 WL 3695609, at *4-5. In *Oberg*, however, the ALJ did not identify the time periods during which the ALJ found that Claimant had been substantially gainfully employed. *Id.* at *4.

Unlike in *Oberg*, here the ALJ did identify the specific time periods during which Claimant engaged in substantial gainful activity—the last two quarters of 2012 and 2013. AR 14. During this time, Claimant was employed at Hunton's Warehouse, where his work was seasonal and recurrent. Additionally, in finding that Claimant engaged in substantial gainful activity in 2012 and 2013, the ALJ explained that "[a]ccording to his hearing testimony, Mr. Oberg has begun the same seasonal work again this year." AR 14. The purpose of a trial work period is to allow an individual to test his or her ability to work. 20 C.F.R. § 404.1592(a). Here, Claimant engaged in the same type of seasonal work for three years in a row. Thus, if the ALJ committed any error in not discussing whether Claimant's recurrent, seasonal work constituted trial work periods, such error was harmless.

### 3. Unsuccessful Work Attempt

Generally, an unsuccessful work attempt is work that occurs after a significant break in the continuity of work, lasts less than sixth months, and is stopped or reduced because of an impairment. 20 C.F.R. § 404.1574(c). The earnings from an unsuccessful work attempt do not show that a claimant is capable of engaging in substantial gainful activity. *Id.* § 404.1574(a)(1). There are three main requirements for the unsuccessful work attempt exclusion:

> (1) an individual must have a significant break in the continuity of his or her work before the work attempt;
>
> (2) if a work attempt lasts between three and sixth months . . . it must end, or be reduced below the substantial gainful activity earnings level, because of the impairment or because of the removal of special conditions which took into account the impairment; and
>
> (3) one of the additional four factors must be satisfied: (i) You were frequently absent from work because of your impairment; (ii)

> Your work was unsatisfactory because of your impairment; (iii)
> You worked during a period of temporary remission of your
> impairment; or (iv) You worked under special conditions that were
> essential to your performance and these conditions were removed.

*Galanos v. Astrue*, 2013 WL 1365901, at *2-3 (N.D. Cal. Apr. 3, 2013) (citing 20 C.F.R.

§ 404.1574(c)(4)).

Claimant argues that the ALJ erred by not considering whether Claimant's work in the

last two quarters of 2012 and 2013 constituted unsuccessful work attempts. Claimant does not

identify any evidence in the record, however, that would suggest that Claimant's work ended or

was reduced because of his alleged impairments. Rather, Claimant testified that he was laid off

because the work was seasonal. AR 39. Thus, the ALJ did not err in not considering whether

Claimant's work in the last two quarters of 2012 and 2013 were unsuccessful work attempts.

## C. The VRS Determination

In April 2012, Claimant sought rehabilitation services from VRS. AR 557. He reported

occasionally hearing voices as well as impairment due to mobility issues and chronic pain.

AR 560. On June 1, 2012, VRS issued a report entitled "Eligibility Determination" (the "VRS

Determination"). AR 564. The VRS counselor, Kay Clark ("Clark"), indicated that Claimant had

a "Disability Priority" of "Most Significantly Disabled—Priority 1." *Id.* Clark described

Claimant's impediments to employment, including his inability to interact in a socially

acceptable manner at work, move from one place to another or physically manipulate his

environment, carry out activities required for work, perform specific tasks for job duties, and

perform with physical, emotional, or psychological stamina, all of which cause or result in job

loss. *Id.* Clark stated that she and Claimant had determined that Claimant "requires and can

benefit from VR services to prepare for, enter into, engage in, or retain gainful employment." *Id.*

On August 7, 2012, Claimant's VRS file was closed after the Office was unable to locate or contact him. AR 566.

Claimant argues that the ALJ erred by ignoring the June 1, 2012 VRS Determination. Social Security Ruling ("SSR") 06-03p, *available at* 2006 WL 2329939 (Aug. 9, 2006), requires that an ALJ consider disability determinations made by other agencies. *Id.* at *6-7 ("[E]vidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered."). This is consistent with the requirement that an ALJ is required to evaluate all of the evidence in the case record that may have a bearing on the ALJ's disability determination. *Id.* A finding of disability made by another agency, however, is not binding on the ALJ. *Id.* at *6.

The Commissioner agrees that under SSR 06-03p, the ALJ should have explained the consideration given to the VRS Determination.[3] The Commissioner, however, argues that the error was inconsequential to the ultimate disability determination. The Court agrees.

The VRS Determination was prepared by a vocational counselor, making it lay evidence. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) ("The regulations treat '[p]ublic and private social welfare agency personnel' as 'other sources,' 20 C.F.R. § 404.1513(d)(3), and the ALJ may expressly disregard lay testimony if the ALJ 'gives reasons germane to each witness for doing so.'") (alteration in original) (citation omitted). Evidence from

_____

[3] The Court notes that there is case law stating that VRS determinations are not disability determinations under SSR 06-03p because VRS "'makes eligibility determinations, not disability determinations.'" *Davis v. Colvin*, 2016 WL 165004, at *4 (D. Or. Jan. 14, 2016) (quoting *Parker v. Colvin*, 2014 WL 3672923, at *2 (D. Or. July 22, 2014)); *see also Link v. Astrue*, 2012 WL 5037029, at *11 (D. Or. Oct. 16, 2012) ("The Vocational Rehabilitation Services' 'Eligibility Determination' cannot be fairly characterized as a 'disability determination' within the meaning of SSR 06-03. . . . The characterization of Plaintiff as 'most significantly disabled' simply indicated that Plaintiff was deemed qualified to receive a certain level of vocational rehabilitation services.").

public or private social welfare organizations and their staff, as "other source" lay testimony, is competent if it shows the severity of a claimant's impairment(s) and how the impairment(s) affect the claimant's ability to work. 20 C.F.R. § 404.1513(d)(3); *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs if she fails to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1119. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (alterations in original) (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores uncontradicted lay witness testimony, however, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when

fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The Commissioner argues that the ALJ's error is harmless because Clark's descriptions of Claimant's impairments conflict with Dr. Kruger's opinion regarding Claimant's functional limitations. Dr. Kruger's opinion, as that of an "acceptable medical source," may be entitled to more weight than Clark's opinion, as that of an "other source." *See* Social Security Ruling 06-03p, *available at* 2006 WL 2329939, at *5 ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source.'"). As the ALJ discussed, Dr. Kruger found that Claimant "would likely have 'no difficulty understanding simple instructions and would be able to complete tasks related to those instructions within a reasonable period of time.'" AR 19 (citation omitted). This finding contradicts Clark's conclusions that Claimant is unable to carry out activities, perform specific tasks necessary for employment, and perform with emotional or psychological stamina.

Clark's statements that Claimant is unable to move from one place to another, physically manipulate his environment, perform with physical stamina, interact with others in a socially acceptable manner at work, and that Claimant requires vocational rehabilitation services before he can enter into gainful employment are all discredited by the fact that Claimant successfully engaged in seasonal warehouse and farm work in 2012, 2013, and 2014. The ALJ referred to the evidence of Claimant's seasonal work when the ALJ found Claimant to be less than fully credible. AR 18. Because Clark's testimony was contradicted by that of Dr. Kruger and because Clark's claims are discredited by the same evidence that the ALJ referred to in discrediting Claimant's claims, the ALJ's failure to discuss the June 1, 2012 disability was "inconsequential

to the ultimate nondisability determination" in the context of the record a whole and thus was harmless error. *See Molina*, 674 F.3d at 1119, 1122 (quotation marks omitted).

## D. Concentration, Persistence, and Pace

Claimant argues that the RFC does not properly take into account his limitations in concentration, persistence, and pace. Specifically, Claimant argues that: (1) the ALJ improperly discredited Claimant's testimony regarding the intensity, persistence, and limiting effects of his symptoms; (2) the ALJ failed to include appropriate limitations addressing her own findings at Step Three that Claimant had moderate difficulties with regard to concentration, persistence, or pace into the RFC; and (3) the ALJ improperly rejected the opinions of treating and examining physicians who diagnosed Claimant with psychological impairments.

### 1. Claimant's Subjective Symptom Testimony

Claimant argues that the ALJ failed to give legally sufficient reasons for discounting his statements concerning the intensity, persistence, and limiting effects of his symptoms. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid[,] [and] unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment . . . ." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

After considering the evidence, the ALJ found that Claimant's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms." AR 18. The ALJ also found, however, that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id.* The ALJ explained that Claimant's "ongoing work activity obviously undermines his assertion that his combination of impairments has rendered him disabled," and stated that Claimant "conceded at [the] hearing that his medications allow him to work." *Id.*

The ALJ noted that in Claimant's initial application materials, Claimant asserted that he could not work on a full-time basis due to his depression, ADD, obsessive-compulsive disorder, anxiety, and chronic pain. AR 18. Claimant stated that he stopped working as a carnival ride operator in October 2010 because his seasonal job ended and he "was slow and not likely to be able to do [the] job." AR 295-97. At the hearing, Claimant testified that he has engaged in additional work since 2010, including his seasonal work for Hunton's Warehouse. AR 38. He testified that he is currently working full-time at Hunton's Farm, where he sprays weed killer. AR 38-39. Claimant testified that he was unable to work between 2010 and when he got the job at Hunton's Warehouse in 2012 because he was improperly medicated. AR 44. Claimant testified that before he got the proper medications, he was "very moody" and "couldn't [hold] a job down." AR 46. Claimant testified that he is now "comfortable holding a job down without worrying about getting fired" because "the medicines are helping me stay calm and think clearer about things." AR 47.

The ALJ additionally found that Claimant's statements to Dr. Alvord in 2012 were inconsistent with his work history and thus a reason for discounting his credibility. AR 19. Claimant told Dr. Alvord that he usually "'end[s] up doing just seasonal work'" because he tends to "'get fired really easily.'" AR 583. The ALJ noted that Claimant's jobs have ended only at the close of the season and that there is no evidence in the record of inadequate job performance or of Claimant being terminated from any position. AR 19. The ALJ also identified Claimant's statement to Dr. Alvord that he "'has had a job every two years for the past 10 years'" as inconsistent with the fact that he has maintained employment in two consecutive seasons. AR 19. Claimant asserts that this last statement is in error because Claimant made this statement in 2012, and the employment the ALJ was referring to was Claimant's work in fall 2012 and fall 2013 for Hunton's Warehouse.

Even if the Court interprets Claimant's vague statement in 2012 as saying that Claimant "has had a job *only* every two years for the past 10 years," as both the ALJ and Claimant appear to do, this statement is still inconsistent with Claimant's pre-2012 work history. The record shows that Claimant was employed each year from 2006 through 2010. AR 297. Thus, the ALJ's explanation that Claimant's ongoing work history and his statement during his administrative hearing that he is now "comfortable holding a job down" are clear and convincing reasons for discounting Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms. AR 47. Accordingly, the Court finds that the ALJ properly evaluated Claimant's testimony.

### 2. The ALJ's Finding

Claimant argues that the ALJ erred by not incorporating appropriate limitations addressing her finding that Claimant had moderate difficulties "with regard to concentration, persistence or pace" into the RFC and the hypothetical given to the VE. AR 16. When an ALJ

makes a finding in step three of moderate limitations in concentration, persistence, or pace, those limitations must be expressly reflected in the RFC assessment. *Saucedo v. Colvin*, 2014 WL 4631225, at \*17-18 (D. Or. Sept. 15, 2014); *see also Lubin v. Comm'r Soc. Sec. Admin.*, 507 F. App'x 709, 712 (9th Cir. 2013) ("The ALJ must include all restrictions in the [RFC] determination . . . including moderate limitations in concentration, persistence, or pace."). "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

In finding that Claimant had difficulties in concentration, persistence, or pace, the ALJ discussed the August 8, 2012 psychological evaluation of Dr. Alvord. AR 16. The ALJ stated that Claimant's performance on standardized tests performed by Dr. Alvord "revealed problems with concentration and attention." *Id.* For example, Claimant was unable to correctly spell "world" backwards and "'struggled with the concept of serial 7's.'" *Id.* Claimant, however, was able to calculate a simple multiplication problem and correctly spell "world" forward, and Dr. Alvord described Claimant's short-term and long-term memory as "'intact.'" *Id.* Additionally, the ALJ noted that Dr. Robert A. Kruger found that Claimant "would likely have 'no difficulty understanding simple instructions and would be able to complete tasks related to those instructions within a reasonable period of time.'" AR 19.

Here, the RFC limits Claimant to "light work" and states that Claimant "can understand, remember, and carry out simple instructions that can be learned through demonstration and that do not require the production of written work product." AR 17. This is consistent with Dr. Kruger's finding that Claimant was capable of understanding and carrying out simple instructions. Thus, the Court finds that the ALJ's RFC assessment sufficiently incorporates the

ALJ's finding that Claimant had moderate difficulties with concentration, persistence, or pace into the RFC. AR 17. *See Sabin v. Astrue*, 337 Fd. App'x 617, 621 (9th Cir. 2009) (finding that an RFC limiting an individual to simple and repetitive tasks adequately accounted for the individual's moderate difficulties as to concentration, persistence, or pace).

### 3. Physicians' Opinions

Claimant argues that the ALJ improperly rejected the opinions of physicians who diagnosed Claimant with attention deficit hyperactivity disorder ("ADHD") and schizoaffective disorder at step two of her analysis. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830.

An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. It is error to ignore an examining physician's medical opinion without providing reasons for doing so. An ALJ effectively rejects an opinion when he ignores it. *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

Dr. Alvord and Dr. Carmen MacMillian reported that Claimant suffered from ADHD in August 2012 and March 2013, respectively. AR 582-87, AR 487-88. Dr. James Ruff, Dr. Christine Jensen-Fox, and Dr. MacMillan all reported in 2013 that Claimant had schizoaffective disorder. AR 464-66, 473-74, 486-88. Dr. Kruger provided an evaluation of Claimant to Disability Determination Services on October 30, 2010. Dkt. 404. Dr. Kruger diagnosed Claimant with "adjustment disorder with depressed mood," but not schizoaffective disorder or ADHD. AR 409. Thus, the opinions of Dr. Alvord, Dr. MacMillian, Dr. Ruff, and Dr. Jensen-Fox are contradicted by Dr. Kruger's opinion, and may be discredited by the ALJ if she provides "specific, legitimate reasons" for doing so. *See Murray*, 722 F.2d at 502.

### a. ADHD Diagnoses

The ALJ rejected the ADHD diagnoses of Dr. Alvord and Dr. MacMillian because they were "solely based" on Claimant's reported symptoms, citing 20 C.F.R. § 404.1508. AR 15. Under 20 C.F.R. § 404.1508: "A physical or mental impairment must be established by medical

evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. § 404.1528(b) defines "Psychiatric signs" as "medically demonstrable phenomena that indicate specific psychological abnormalities." "Laboratory Findings" may be made by psychological tests. *Id.* § 404.1528(c).

In Dr. MacMillan's March 8, 2013 interview with Claimant in which she diagnosed him with ADHD, Dr. MacMillan "used motivational interviewing to assess symptom severity and impact on overall functioning." AR 487-88. Although Dr. MacMillan observed Claimant's "pressured speech" and noted that it "may be related to ADHD," she appears to have based her ADHD diagnosis on the fact that Claimant was previously diagnosed with the disorder, as well as on Claimant's description of his current and past symptoms. AR 487. Thus, the ALJ's conclusion that Dr. MacMillian's diagnosis was based solely on Claimant's reported symptoms was a specific and legitimate reason, supported by substantial evidence in the record, for discrediting her diagnosis.

In Dr. Alvord's August 8, 2012 psychological evaluation in which he diagnosed Claimant with ADHD, Dr. Alvord includes the results of several psychological tests that he performed on Claimant. AR 582-86. Thus, unlike Dr. MacMillan, Dr. Alvord did not solely base his diagnosis on Claimant's reported symptoms. In evaluating Dr. Alvord's clinical conclusions, however, the ALJ noted that Dr. Alvord "relied on statements from Mr. Oberg's [*sic*] regarding his academic progress and work history that were not consistent with prior statements or subsequent hearing testimony." AR 19. The ALJ thus found that the "validity of Dr. Alvord's clinical conclusions" was undermined by Claimant's statements to Dr. Alvord, including Claimant's statements regarding his tendency to get fired very easily and the fact that he expected to get fired because of "difficulties with focus, attention, and concentration." *Id.* As discussed in Section D.1. above,

the ALJ found these statements were inconsistent with Claimant's work history, as there was no evidence in the record of inadequate job performance or of Claimant being terminated from any position. Thus, the ALJ discredited Dr. Alvord's clinical conclusions because they relied upon Claimant's discounted testimony. This is a legitimate and specific reason, supported by substantial evidence, for discrediting Dr. Alvord's clinical conclusions.

### b. Schizoaffective Disorder Diagnoses

The ALJ rejected the schizoaffective disorder diagnoses of Dr. Jensen-Fox and Dr. MacMillan because their diagnoses "appear to adopt uncritically the assessment of nurse practitioner Amanda Marie Lies, ARNP," who is not an acceptable medical source for the purpose of establishing a medically determinable impairment. AR 15; 20 C.F.R. §§ 404.1513(a), 416.913(a). In Dr. Jensen-Fox's February 11, 2013 report, she states that Claimant "has a mood disorder, which was being followed by our psychiatric nurse practitioner [Lies] . . . [who] felt he had schizoaffective disorder, obsessive-compulsive disorder, and possibly even paranoid schizophrenia." AR 473. In Dr. MacMillan's March 8, 2013 report, she stated "our records show [Claimant] was diagnosed with schizoaffective disorder." AR 487-88. Thus, the record shows that Dr. Jensen-Fox and Dr. MacMillan did not make independent determinations of whether Claimant had schizoaffective disorder, but instead relied on the opinion of Lies and their prior records. This is a specific and legitimate reason for discrediting their diagnosis, and the ALJ did not err in rejecting their opinions diagnosing Claimant with schizoaffective disorder.

The ALJ, however, made no reference in her opinion to the March 16, 2013 report of examining physician Dr. Ruff in which Dr. Ruff diagnosed Claimant with schizoaffective disorder. By not discussing Dr. Ruff's report and making contrary findings, the ALJ effectively rejected his opinion. *See Smolen*, 80 F.3d at 1286. The ALJ may not ignore, and thus reject, an examining physician's medical opinion without providing reasons for doing so. *Id.* Here,

Dr. Ruff based his diagnosis not only upon Claimant's reported symptoms of auditory hallucinations, but also upon psychological testing. AR 465-66. Based on this record, the Court cannot conclude that this error was "inconsequential to the ultimate nondisability determination." *Carmickle*, 533 F.3d at 1162.

Because the ALJ committed prejudicial error in failing to discuss the opinion of Dr. Ruff, the Court cannot determine whether the ALJ's RFC assessment adequately accounts for Claimant's restrictions related to concentration, persistence, or pace, and whether the hypotheticals posed to the VE accurately captured Claimant's limitations. *See Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995) (finding that a hypothetical question posed to a vocational expert must "include all of the claimant's functional limitations, both physical and mental"). Thus, outstanding issues remain and the Court remands this case for further proceedings. *Hernandez v. Astrue*, 380 F. App'x 699, 701 (9th Cir. 2010) ("After proper review of a claim, a district court does not abuse its discretion by remanding for further proceedings if outstanding issues remain to be resolved by the ALJ."). On remand, the ALJ shall consider and address Dr. Ruff's opinion. If necessary, the ALJ shall formulate a new RFC and determine whether work exists in significant numbers in the national economy for a person with Claimant's limitations.

## CONCLUSION

The Commissioner's decision that Oberg is not disabled is REVERSED and this case is REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 29th day of February, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge